## Rudolph, Palitz and Company
## v.
## Premium Food Company, Inc.

*Wexler, Mulder & Weisman,* for plaintiffs.

*S. Margolies* and *L. L. Ettinger,* for defendants.

CHUDOFF, J., June 8, 1961.—This case raises the question of whether or not a firm of certified public accountants, doing business as copartners, constitutes a "professional activity" within the meaning of the Fictitious Names Act.[1]

Louis Rudolph, Louis R. Palitz and Harry Barkan, copartners trading as Rudolph, Palitz and Company, filed an action in trespass alleging, inter alia, that on or about September 30, 1960, defendants acting jointly and in concert, by and through their duly authorized agent and employe, Sidney Margulies, falsely and illegally published and printed a letter concerning plaintiffs, containing scandalous, defamatory and libelous matter, not here relevant.

---

[1] Act of May 24, 1945, P. L. 967, sec. 1, as amended; September 23, 1959, P. L. 936, sec. 1 et seq., 54 PS §28.1.

Defendants filed preliminary objections to the complaint, raising a demurrer and plaintiffs' lack of capacity to sue because they had failed to comply with the Fictitious Names Act, in that the name of Harry Barkan had not been included in the application filed by plaintiff company. Section 1 of the Fictitious Names Act, as amended, reads as follows:

"No individual or individuals shall hereafter carry on or conduct any business in this Commonwealth under any assumed or fictitious name, style or designation unless the person or persons conducting or carrying on the same shall have first filed in the office of the Secretary of the Commonwealth and in the office of the prothonotary in the county, wherein the principal place of business is located, . . . . *For the purposes of this act, the term 'business' shall not include any nonprofit or professional activities or such other activities as are expressly or impliedly prohibited by the statutes of this Commonwealth from being carried on under a fictitious name.*" (Italics supplied)

Defendants vigorously argue that, since plaintiffs have not properly registered their fictitious name to include the name of Harry Barkan, plaintiffs are, therefore, barred from bringing "any action" in any of the courts of this Commonwealth, as provided by section 4 of the Fictitious Names Act, as amended. With this contention, the court disagrees.

The word "profession" has been defined by the courts in numerous opinions, the most comprehensive of which may be found in United States v. Laws, 163 U. S. 258, wherein it is said at page 266:

"One definition of a profession is an 'employment, especially an employment requiring a learned education, as those of divinity, law and physic.' (Worcester's Dictionary, Title Profession) In the Century Diction-

ary the definition of the word 'profession' is given, among others, as a 'vocation in which a professed knowledge of some department of science or learning is used by its practical application to the affairs of others, either in advising, guiding, or teaching them, or in serving their interests or welfare in the practice of an art founded on it. Formerly, theology, law, and medicine were specifically known as *the professions*; but as the applications of science and learning are extended to other departments of affairs, other vocations also receive the name. The word implies professed attainments in special knowledge as distinguished from mere skill. A practical dealing with affairs as distinguished from mere study or investigation; and an application of such knowledge to uses for others as a vocation, as distinguished from its pursuit for its own purposes.'"

Finally, in Webster's New International Dictionary, the word "profession" is defined as:

"The occupation, if not purely commercial, mechanical, agricultural, or the like, to which one devotes oneself. . . ."

Although it is evident that an exactingly accurate definition of the word "profession," which will preclude the possibilty of any controversy, is impossible, whatever uncertainty could be said to arise from proper interpretation, it becomes clear that one engaged in the practice of accounting is in a "professional activity," when we inquire into the requirements necessary therefor.

"The C.P.A. Law[2]" states in section 9.4:

"Before any person is permitted to take the examination or is issued a certificate of certified public accountant, the Board shall be satisfied that he has complied with the following requirements:

---

[2] Act of May 26, 1947, P. L. 318, sec. 1, 63 PS §9.1 et seq.

"(1) Completed a four-year high school course or its equivalent and has had at least three (3) years of public accounting experience of a caliber satisfactory to the Board; or

"(2) Is a graduate of a college or university, approved by the State Council of Education, giving a four-year course, and has had at least two (2) years of public accounting experience of a caliber satisfactory to the Board."

There can be no doubt that one who has met the requirements of the State Board of Examiners of Public Accountants has attained a special knowledge as distinguished from a mere skill, and applies that knowledge to uses for others as a vocation. The court may take judicial notice that a certified public accountant need not only possess knowledge of accounting in general but must also be familiar with special fields of jurisprudence, more particularly tax laws of our various local and State governments, not to mention the enormous and complicated laws of our Federal government.

This is the view that has been taken by the Secretary of the Commonwealth when, on April 23, 1956, the Prothonotary of Philadelphia County stated:

"The Secretary of the Commonwealth has taken the position that practice of any of the learned professions, such as law, medicine, dentistry, or public accountancy, is exempt from registration under this law [Fictitious Name Registration Act]. Therefore, in order to adopt a policy consistent with the Secretary's office no registration with this category will be accepted."

For the foregoing reasons we enter the following

*Order*

And now, to wit, June 8, 1961, defendants' preliminary objections are overruled with leave to file an answer to the complaint in trespass within 20 days.